IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

KELLIE STOKES, mom and friend of, B.S.

   Plaintiff

v.              Civil Action No. 3:16-cv-2357-G

             Complaint

SOUTHWEST AIRLINES    and;

             Demand for Jury Trial

   Defendants

## AMENDED COMPLAINT

COMES NOW the Plaintiff, B.S., by Counsel, Dennis McCarty and for his complaint against the Defendant, alleges as follows:

### PRELIMINARY STATEMENT

1. This is an action for actual, mental anguish, punitive, exemplary, costs, and attorney's fees brought pursuant to AIR CARRIER ACCESS ACT (ACAA), 49 U.S.C.A. § 41705 )

### JURISIDICTION AND VENUE

2. Jurisdiction of this Court is conferred by AIR CARRIER ACCESS ACT (ACAA), 49 U.S.C.A. § 41705 and 28 U.S.C. §1331 and supplemental jurisdiction exists for any state law claims pursuant to 28 U.S.C. §1367.

1

3. Venue in this District is appropriate under 28 U.S.C. §1391(b)(2) because Defendant's Corporate office is in Dallas, Texas

## PARTIES

4. Plaintiff, B.S. (hereinafter Plaintiff) is a natural person and is a resident and citizen of Parker County, the State of Texas, United States of America. Plaintiff is an 11 year old minor and afflicted with Autism

5. Defendant, Southwest Airlines, (hereinafter Defendant, Southwest Airlines, or SWA), operates as a common carrier airline, subject to governmental regulations, with significant minimum contacts and business enterprise in the State of Texas. Defendant's Corporate Office is in Dallas, Texas.

6. Plaintiff has standing to bring this complaint because he is substantially impaired in major life activities according to the definitions provided by the Air Carriers Access Act.

## FACTUAL ALLEGATIONS

7. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

8. On August 13, 2014, Plaintiff was with his family, ending a family vacation, and attempted to board a Southwest Airlines plane in Oakland, CA, to his home destination of Love Field in Dallas, Texas.

9. Plaintiff's father was carrying a sibling's car seat, and when they were going through security, the alarms went off on what appeared to be the car seat. Since it was taking so long, the family thought it would be best for Plaintiff's father to carry the rest of

2

the luggage and take the children up to the gate, while Plaintiff's mother stayed behind. Minutes turned into an hour and it was apparent that they would most likely miss their flight, which they did. Nothing was wrong with the car seat and the alarm was faulty and had given an erroneous signal.

       10. The Southwest gate agents felt badly, due to a security error, that the family had missed their flight, so they began trying to find them another flight. The only option at that point, was a flight to Denver, CO, where the family would have to spend the night and continue on to Dallas in the morning. Plaintiff's mother thanked the gate agents, who were very kind and commented on how sweet and well-mannered the three children were, and then the family headed to the next gate to board the flight to Denver. The family began walking down the jet bridge to board the flight and by this time, Plaintiff, who has been diagnosed as being on the Autism Spectrum, was extremely anxious. He wanted to make sure he knew exactly where they were now going and what the plan was, so going down the jet bridge, he asked his mother several times where they were going and what the plan was. Plaintiff's mother had to repeat, several times in order to reassure Plaintiff, that, "Yes, Honey, we're going to Denver first, and then home in the morning." Plaintiff finally seemed perfectly content with that, when out of nowhere, the pilot (captain), who was walking behind them on the jet bridge, SHOUTED, after bending down into Plaintiff's face, that "YES, we are going to DENVER!!" He scared Plaintiff as well as the other two siblings, so, at that point, Plaintiff's mother took all three children and told Plaintiff's father, who was walking behind them with the luggage, "Turn around, we are NOT getting on this flight because it's not safe." The captain just smirked and laughed. The gate agent, who witnessed the incident, said, "I'm booking you on another

3

flight immediately and I am so sorry." She got a supervisor and they immediately filed a report and went to check the captain (so they said), to make sure he was not intoxicated or having rage issues. The only flight available at that point was to San Diego, CA, then home to Dallas in the morning, which Plaintiff and family boarded to San Diego.

      11. Plaintiff and family was forced, once they landed and deplaned, to leave the terminal, therefore they had no choice but to get a hotel room for four hours of sleep, before heading back to the airport.  Plaintiff, on the morning of August 14, 2014, because of his disability and who needs extra sleep, was obviously exhausted and needed food before having his medication.  As soon as the family got through security in San Diego airport that morning, with no car seat issues, they found a place to seat everyone and put down their luggage.  Plaintiff's father immediately went to stand in an extremely long line for food, at the only food place available.  At that point, one sibling, a toddler, as toddlers can do, started trying to take away the video game that Plaintiff was playing. Plaintiff screamed and Plaintiff's mother told the toddler that she could not have the game at that time.  The toddler tried to get it again and Plaintiff then cried and ran away in the extremely busy terminal, packed with people.  Plaintiff's mother instructed Plaintiff's older brother, at the time age 11, almost 12-year old, to quickly go and try to find Plaintiff's father in line so that he could assist.  When they didn't return, Plaintiff's mother asked the gate agent to get security to help get the nine-year old Autistic Plaintiff and help bring him back to the gate.  By the time the officer showed up, Plaintiff was already back with Plaintiff's mother.  About that time, the gate agent informed Plaintiff's mother that Plaintiff and family would not be allowed to board the flight for which they had been waiting!  At that time, Plaintiff was perfectly calm and had been given

something to eat and had taken his medication, to help with anxiety, which is a product of his Asperger's (an Autism Spectrum Disorder). Plaintiff's mother asked the gate agent to look at him and how calm he was. Plaintiff's mother then asked for a supervisor. The supervisor was very nice and professional and said he saw no problem with Plaintiff or the other children and would talk with the captain of the flight. The supervisor returned and informed Plaintiff's mother that the captain had said that no, the family was not welcome on the flight. Plaintiff's mother asked the supervisor if he understood that that was a violation of the ADA. The supervisor said yes and that he was extremely sorry, but that it was the captain's call. After being taken through the airport to the "new" flight, and finally boarding a flight to Albuquerque, NM, and then onto Dallas, Plaintiff and his family were finally on their way home to Dallas. Plaintiff sat next to two women on the flight to ABQ, and they commented on how sweet and polite he was.

**12.** Once Plaintiff and family finally arrived home in Dallas, Texas, Plaintiff's mother attempted to contact Southwest's customer "service" agents. They were very rigid and it was difficult to get a phone call returned by a supervisor. The only thing they offered Plaintiff was a gift basket with some novelty items like pens and cups. Plaintiff's mother also contacted the Southwest supervisor who had tried to help her at the San Diego airport. The San Diego supervisor actually told Plaintiff's mother that the captain of the flight that they were not "allowed" to board, had called him once they landed and apologized, because he had felt after take-off that he had made the wrong decision!

13. Defendant maliciously, willfully, and/or negligently violating the Statute AIR CARRIER ACCESS ACT (ACAA), 49 U.S.C.A. § 41705 .

14. As a result of Defendants conduct, Plaintiff has suffered great

5

emotional and mental pain and anguish, and all to Plaintiff's great detriment and loss.

15. At all times pertinent hereto, Defendant is acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

16. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

## CAUSES OF ACTION

17. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

18. This suit is based upon the Defendants violation of AIR CARRIER ACCESS ACT (ACAA), 49 U.S.C.A. § 41705. All causes of action were the producing causes of damages which Plaintiff suffered.

**COUNT I: AIR CARRIER ACCESS ACT (ACAA): 49 U.S.C.A. § 41705**

19. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

20. Defendant didn't allow Plaintiff to board the flight because of his disability.

21. The Air Carrier Access Act (ACAA) prohibits air carriers from discriminating against passengers because of their disability.

22. The Fifth Circuit as ruled that there is a private right of action pursuant to the ACAA. *Please see Shinault v. Am. Airlines, Inc.,* 936 F.2d 796, 800 (5th Cir. 1991)

(The legislative history of the ACAA indicates that Congress intended to provide a private cause of action under the ACAA and that cause of action would be consistent with the statutory scheme. *See Tallarico v. Trans World Airlines, Inc.*, 881 F.2d 566, 569–70 (8th Cir.1989). Private remedies for discrimination by airlines have traditionally emanated from federal legislation. *See* § 404(b) of the Federal Aviation Act of 1958, 49 U.S.C. § 1374(b), *repealed by* Airline Deregulation Act of 1978, 49 U.S.C.App. § 1551(a)(2)(B). We conclude, therefore, that a private cause of action exists under the ACAA.)

23.  The ACAA allows for private plaintiffs to recover all necessary and appropriate remedies.  *Please see Shinault v. Am. Airlines, Inc*., 936 F.2d 796, 804 (5th Cir. 1991)(Because Congress did not limit the available remedies under the ACAA, we conclude that Congress intended to allow private plaintiffs to recover all necessary and appropriate remedies.); *please further see Shinault v. Am. Airlines, Inc.,* 936 F.2d 796, 804 (5th Cir. 1991)(We conclude that compensatory damages and emotional distress damages are necessary and appropriate under the ACAA. Finally, we need not decide whether punitive damages are recoverable because Shinault does not allege the type of wanton or malicious conduct that is required to recover punitive damages.).  In this case, Plaintiff has alleged facts that Defendant's conduct was wanton and malicious and is requesting Punitive Damages.

24.  As a result of Defendant's conduct, Plaintiff has suffered great physical emotional and mental pain and anguish, including but not limited to exacerbation of existing medical and psychiatric conditions, severe emotional distress, extreme anxiety, humiliation, embarrassment and all to Plaintiff's great detriment and loss.

25. As a result of Defendant's conduct, Plaintiff has suffered actual damages and all to Plaintiff's great detriment and loss.

26. At all times pertinent hereto, Defendant was acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

27. At all times pertinent hereto, the conduct of the Defendant, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, or grossly negligent disregard for federal and state laws and the rights of the Plaintiff herein.

28. The conduct of Defendant was a direct and proximate cause, as well as a Substantial factor in bringing about the damages and harm to Plaintiff that are outlined above and, as a result, Defendants are liable to compensate Plaintiff for the full amount of actual, statutory damages, exemplary damages, costs and attorney fees as well as such other relief, permitted by law. Plaintiff will articulate their full extent once ascertained with particularity.

## COUNT II-NEGLIGENCE

29. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein

30. The Air Carrier Access Act does not preempt Plaintiff's claim for Negligence. Please see <u>Moore v. Nw. Airlines, Inc.</u>, 897 F. Supp. 313, 316 (E.D. Tex. 1995)(Accordingly, the Court finds that the Plaintiff's state law tort claims are not preempted by the ACAA, and the defendant's motion for summary judgment is

DENIED.)

31. As a common carrier and facilitator of commercial airline passage, Defendant has an affirmative duty to train their employees about disability awareness, including the procedures and protocols necessary to avoid disability discrimination.

32. Defendant's conduct fell short of the duties owed by doing (and not limited to) the following; a) not allowing Plaintiff on the flight from San Diego to Dallas; b) failing to provide reasonable accommodations at the ticket counter when the tickets were erroneously cancelled and Plaintiff not allowed to board the flight; c) not providing Plaintiff with priority seating once the erroneous cancellation was resolved; d) evidencing disability discrimination first by the Flight Captain, ticket agent, and supervisor who were not familiar with autism, even after they were informed of Plaintiff's disability; e) not properly training or supervising their employees about appropriate disability protocol and disability awareness; f) not providing Plaintiff with a claim resolution official as required by law; g) failing to provide Plaintiff with a written explanation as to why he was not allowed to board the flight.

33. As a result of Defendant's conduct, Plaintiff has suffered great physical emotional and mental pain and anguish, including but not limited to exacerbation of existing medical and psychiatric conditions, severe emotional distress, extreme anxiety, humiliation, embarrassment and all to Plaintiff's great detriment and loss.

34. As a result of Defendant's conduct, Plaintiff has suffered actual damages and all to Plaintiff's great detriment and loss.

35. At all times pertinent hereto, Defendant was acting by and through their

agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

36. At all times pertinent hereto, the conduct of the Defendant, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, or grossly negligent disregard for federal and state laws and the rights of the Plaintiff herein.

37. The conduct of Defendant was a direct and proximate cause, as well as a Substantial factor in bringing about the damages and harm to Plaintiff that are outlined above and, as a result, Defendants are liable to compensate Plaintiff for the full amount of actual, statutory damages, exemplary damages, costs and attorney fees as well as such other relief, permitted by law. Plaintiff will articulate their full extent once ascertained with particularity.

**COUNT III-INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

38. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein

39. The Air Carrier Access Act does not preempt Plaintiff's claim for Intentional Infliction of Emotional Distress. Please see <u>Moore v. Nw. Airlines, Inc.</u>, 897 F. Supp. 313, 316 (E.D. Tex. 1995)(Accordingly, the Court finds that the Plaintiff's state law tort claims are not preempted by the ACAA, and the defendant's motion for summary judgment is DENIED.)

40. In doing the acts herein alleged, Defendant conducted themselves in a manner not tolerated within the bounds of decent society. Given the staggering numbers of persons with autism, the actions of Defendant is particularly egregious. Rather than acting as decent members of society, they intentionally chose to mimic, antagonize and impede Plaintiff's access to public transportation, moreover, Defendant, while knowing Plaintiff's particular vulnerabilities and with actual knowledge of his mental and emotional disorders, acted with malice, intolerable cruelty and willful disregard, and not consistent with a commercial carrier or agency of the United States Government.

41. Defendant mocked and intimidated Plaintiff and acted without compassion of any kind.

42. As a result of Defendant's conduct, Plaintiff has suffered great physical emotional and mental pain and anguish, including but not limited to exacerbation of existing medical and psychiatric conditions, severe emotional distress, extreme anxiety, humiliation, embarrassment and all to Plaintiff's great detriment and loss.

43. As a result of Defendant's conduct, Plaintiff has suffered actual damages and all to Plaintiff's great detriment and loss.

44. At all times pertinent hereto, Defendant was acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

45. At all times pertinent hereto, the conduct of the Defendant, as well as that

of their agents, servants and/or employees, was malicious, intentional, willful, reckless, or grossly negligent disregard for federal and state laws and the rights of the Plaintiff herein.

46. The conduct of Defendant was a direct and proximate cause, as well as a Substantial factor in bringing about the damages and harm to Plaintiff that are outlined above and, as a result, Defendants are liable to compensate Plaintiff for the full amount of actual, statutory damages, exemplary damages, costs and attorney fees as well as such other relief, permitted by law. Plaintiff will articulate their full extent once ascertained with particularity.

## EXEMPLARY DAMAGES

47. Plaintiff would further show that the acts complained herein of Defendant were committed with fraud, malice, with gross negligence and with the specific and predetermined intention of enriching said Defendant at the expense of Plaintiff. In order to punish said Defendant for such unconscionable overreaching and to deter such actions in the future, Plaintiff also seeks recovery from Defendant for exemplary damages as provided by Texas Civil Practice & Remedies Code §41.001(5)

## DEMAND FOR JURY TRIAL

48. Plaintiff demands trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff seeks judgment in Plaintiff's favor and damages against the Defendant, based on the following requested relief:

(a) Actual damages in an amount to be determined at the time of trial;

(b) Mental anguish damages in an amount to be determined at the time of trial

(c) Punitive Damages pursuant to the Air Carrier Access Act(ACAA).

(d) Attorney's fees

(e) Exemplary Damages pursuant to Texas Civil Practice & Remedies Code §41.001(5).

(f) pre-post verdict interest

(g) Such other and further relief as may be necessary, just and proper.


Dated: November 17, 2016

Respectfully submitted,

/s/ Dennis McCarty_____
Dennis McCarty
MS bar number 102733
817-704-3375
Federal Bar No. 993800
P.O. Box 111070
Carrollton, TX  75011
Attorney for Plaintiff
James Foley
James Foley PLLC
Texas Bar No. 24055491
4116 W Vickery Blvd
#103
Fort Worth, TX 76107
817/738-1633
Fax: 866/512-5807
Email: James@JamesFoleyPLLC.com
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of November, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the attorneys on record:

Date Signed this <u>the 17th</u> day <u>of November 17, 2016</u>


                                          Respectfully submitted,

                                              <u>/s/ Dennis McCarty</u>
                                              Dennis McCarty
                                              ATTORNEY FOR PLAINTIFF