UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KELLIE STOKES, Mom and Friend of B.S., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| VS. | ) ) | 3:16-CV-2357-G |
| SOUTHWEST AIRLINES, | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the motion of the defendant, Southwest Airlines Co. ("Southwest"), to dismiss the claims of the plaintiff, B.S., pursuant to FED. R. CIV. P. 12(b)(6) (docket entry 20). For the reasons stated below, the defendant's motion is granted in part and denied in part.

I. BACKGROUND

A. Factual Background

B.S., by and through his next friend and mother, Kellie Stokes, commenced this action against Southwest, alleging various claims arising out of events that occurred during a Stokes family trip on Southwest. Plaintiff's Amended Complaint

("Amended Complaint") (docket entry 17). B.S. is a Texas resident. *Id.* ¶ 4. Southwest operates as a common carrier airline, and its corporate office is in Dallas, Texas. *Id.* ¶ 5.

B.S is a minor afflicted with autism. *Id.* ¶ 4. B.S. contends that Southwest did not permit B.S. to board a flight because of his disability, and that Southwest's conduct violates the Air Carrier Access Act ("ACAA"), 49 U.S.C. § 41705. *Id.* ¶ 20. B.S. also brings state law negligence and intentional infliction of emotional distress ("IIED") claims arising from Southwest's alleged treatment of him during his travels and its alleged failure to provide reasonable accommodations to B.S.'s disability. *Id.* ¶ 32.

On August 13, 2014, B.S., then 11 years old, was traveling from Oakland, California, to Dallas, Texas, when he and his family missed their flight due to delays at a security checkpoint. *Id.* ¶¶ 8, 9. Southwest gate agents booked the family on another flight to Denver, Colorado, where they would have to spend the night and continue to Dallas in the morning. *Id.* ¶ 10. When the family was walking through the jet bridge to board the flight to Denver, B.S. became extremely anxious and repeatedly asked his mother where they were going. *Id.* In response, B.S.'s mother explained multiple times that they were flying to Denver first and would be home in the morning. *Id.* A Southwest pilot who had been walking behind them on the jet bridge then leaned down and yelled in B.S.'s face, "YES, we are going to DENVER!!"

*Id.* (emphasis in original). B.S.'s mother then declared to her family, "[t]urn around, we are not getting on this flight because it's not safe." *Id.* In response, the Southwest pilot allegedly smirked and laughed. *Id.* A Southwest agent then booked the family on another flight, this time to San Diego, California. *Id.*

B.S. and his family checked into a hotel after arriving in San Diego. *Id.* ¶ 11. After four hours of sleep, the family returned to the San Diego airport for their flight to Dallas. *Id.* Before boarding, B.S. became upset and ran away into the busy terminal, and B.S.'s mother asked the gate agent for assistance from security to locate B.S. *Id.* Before security arrived, B.S. had returned to his mother and had calmed down. *Id.* The gate agent then informed B.S.'s mother that the family would not be permitted to board the flight to Dallas. *Id.* The gate agent's supervisor, after a discussion with the flight's captain, confirmed that B.S. and his family would not be permitted to board the flight. *Id.* The family later flew from San Diego to Albuquerque, New Mexico, and from Albuquerque to Dallas without further incident. *Id.*

B. <u>Procedural Background</u>

B.S. filed his original complaint on August 12, 2016. *See* Original Complaint (docket entry 1). B.S. filed an amended complaint on December 22, 2016. *See* Amended Complaint. In response, Southwest filed the instant motion pursuant to Rule 12(b)(6). *See* Motion to Dismiss Plaintiff's Amended Complaint (docket entry

20). B.S. then filed a timely response, which was followed by Southwest's timely reply. *See* Plaintiff's Response (docket entry 23); Defendant's Reply (docket entry 24). The motion is now ripe for decision.

## II. ANALYSIS

### A. Rule 12(b)(6) Motion to Dismiss

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks, brackets, and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction*

*Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice pleading standard to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678. The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" his claims against Southwest "across the line from conceivable to plausible." See *id.* at 679, 683.

1. *The Plaintiff's Claim Under the ACAA*

Under the ACAA, air commerce carriers such as Southwest "may not discriminate against an otherwise qualified individual on the following grounds: (1) the individual has a physical or mental impairment that substantially limits one or more major life activities[;] (2) the individual has a record of such an impairment[;] (3) the individual is regarded as having such an impairment." 49 U.S.C. § 41705.

The Fifth Circuit has held that "a private cause of action exists under the ACAA." *Shinault v. American Airlines, Inc.*, 936 F.2d 796, 800 (5th Cir. 1991). Southwest urges the court to find that no private cause of action exists under the ACAA and to adopt the Eleventh Circuit's ACAA private cause of action analysis. *See* Defendant's Motion, at 13-17; *Love v. Delta Airlines*, 310 F.3d 1347, 1360 (11th Cir. 2002) (holding Congress "did not provide [disabled air passengers] with the right to sue in a district court for ACAA violations," and that district courts are "preclude[d] . . . from implying such a right of action"). In *Love*, the Eleventh Circuit applied the framework announced in *Alexander v. Sandoval*, 532 U.S. 275 (2001), to find that no private cause of action exists under the ACAA. See *id.* at 1351; *Sandoval*, 532 U.S. 275, 293 (holding certain regulations promulgated under § 601 and § 602 of Title VI of the Civil Rights Act of 1964 did not provide for a private right of action). It is true that other courts, post-*Sandoval*, have found no private right of action exists

under the ACAA. See, *e.g.*, *Lopez v. Jet Blue Airways*, 662 F.3d 593, 596-98 (2d Cir. 2011); *Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263, 1269-71 (10th Cir. 2004); *Love*, 310 F.3d at 1358-59. However, in a case decided after *Sandoval*, the Fifth Circuit stated, "[i]n *Shinault* . . . this court specifically held that the ACAA provides a private right of action. *Shinault* has not been overruled even though other circuits have reached a different conclusion." *Bynum v. American Airlines, Inc.*, 166 Fed. App'x. 730, 733 (5th Cir. 2006).

In accordance with Fifth Circuit precedent, the court concludes that a private cause of action exists under the ACAA. The court finds B.S.'s allegations "plausibly give rise to an entitlement of relief." See *Iqbal*, 556 U.S. at 678-79. The plaintiff has "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* As a result, Southwest's motion to dismiss B.S.'s ACAA claim pursuant to Rule 12(b)(6) is denied.

2. *Federal Preemption of the State Law Tort Claims*

Southwest also argues that the Airline Deregulation Act ("the Act") preempts B.S.'s state law tort claims. Defendant's Motion at 5. Under the Act's preemption provision, "a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or *service* of an air carrier . . . ." 49 U.S.C. § 41713(b)(1) (emphasis added). The Supreme Court has held that the phrase

"other provision having the force and effect of law" includes common-law claims. *Northwest, Inc. v. Ginsberg*, __ U.S. __, 134 S. Ct. 1422, 1429 (2014).

"Any state law, including state common law, 'having a connection with or reference to' airline prices, routes, or services is preempted unless the connection or reference is 'too tenuous, remote, or peripheral.'" *Onoh v. Northwest Airlines, Inc.*, 613 F.3d 596, 599 (5th Cir. 2010) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992)). The Fifth Circuit interprets "services" broadly under the Act to include "ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself." *Id.* at 599-600 (quoting *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc)). In *Onoh*, the Fifth Circuit held that an airline agent's refusal to permit a passenger to board a flight fell within the "services" definition of the Act and that plaintiff's IIED claim relating to the airline's refusal was therefore preempted. *Onoh*, 613 F.3d at 600.

In *Hodges*, the Fifth Circuit undertook an en banc review of prior precedent and held the Act preempts state regulation of aircraft "services" but not aircraft "operation." *Hodges*, 44 F.3d at 336. In that case, a passenger on a Delta Airlines flight was injured when a case of rum fell from an overhead compartment. See *id.* at 335. The plaintiff claimed that Delta was negligent in allowing the rum to be stored in the overhead compartment. See *id.* at 340. Explaining that the plaintiff's claim was not preempted, the *Hodges* court observed that "[o]ne uses the overhead luggage

racks or the food and beverages provided in aircraft operation just as one uses the cigarette lighter or built-in cooler compartment in an automobile, and all these devices are available to support the general purpose of navigation." *Id.* at 338. Unlike the situation in *Hodges*, the claims in the present case do not arise from the "maintenance" or "operation" of the aircraft.

B.S. filed the instant negligence cause of action alleging that Southwest has an affirmative duty to "train their [sic] employees about disability awareness, including procedures and protocols necessary to avoid disability discrimination." Amended Complaint ¶ 31. Specifically, B.S. maintains that Southwest was negligent in preventing B.S. from boarding his flight from San Diego to Dallas; failing to provide reasonable accommodations at the ticket counter when the tickets were erroneously cancelled and B.S. was not allowed to board the flight; discriminating against B.S. on the basis of his disability; failing to train and supervise employees regarding appropriate disability protocols; failing to provide a claim resolution official; and failing to provide B.S. with a written explanation as to why he was not allowed to board the flight. *Id.* ¶ 32.

B.S.'s tort claims rest on three separate sets of alleged actions by Southwest: (1) Southwest's refusal to permit B.S. to board the flight from San Diego to Dallas; (2) Southwest's alleged failure to provide disability accommodations to B.S. (such as priority seating, a complaint resolution officer, a written explanation, and properly

trained employees capable of recognizing and handling B.S.'s disabilities); and (3) the alleged conduct of a Southwest pilot. See *id.* ¶ 32, *see also* Defendant's Motion at 9.

Southwest argues that these three sets of alleged actions fall within the Act's definition of airline services, and are therefore preempted by the Act. The court agrees that B.S.'s claims relating to Southwest's refusal to permit B.S. to board the flight from San Diego to Dallas and Southwest's alleged failure to provide disability accommodations are preempted by the Act as they relate directly to "services." The court also concludes, however, that B.S.'s claims relating to the Southwest pilot's conduct are not preempted because the pilot was not performing a "service" at the time of his comment to B.S.

a. Claims Related to Southwest's Refusal to Permit
B.S. and B.S.'s Family to Board Flight

B.S. brings state law negligence and IIED claims related to Southwest's decision to prevent his family from boarding the flight from San Diego to Dallas. Amended Complaint ¶¶ 32, 40. Supreme Court precedent "commands that whatever state laws 'relate to rates, routes, or services' are broadly preempted," and the Fifth Circuit has broadly interpreted "services" to include "ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself." *Hodges*, 44 F.3d at 336 (internal citation omitted). Further, the Fifth Circuit noted the Civil Aeronautics Board concluded that Act "preemption extends to all of

the economic factors that go into the provision of the *quid pro quo* for passenger's [sic] fare, including . . . reservation and boarding practices . . . ." *Id.* at 337.

Here, Southwest's decision to prevent B.S. and his family from boarding a plane fall within the broad definition of services because it relates to the "boarding procedures" and the "transportation itself." *Id.* at 336. Southwest's conduct affected the "*quid pro quo* for passenger's fare," and is related to Southwest's "services." *Id.* at 337. To "impos[e] a state-law-based duty on airlines to transport ticketed passengers" would impermissibly "interfere with the economic deregulation of airline services." *Smith v. America West Airlines*, 44 F.3d 344, 347 (5th Cir. 1995) (en banc). Therefore, B.S.'s claims relating to Southwest's boarding decision is preempted by the Act. As a result, Southwest's motion to dismiss these claims pursuant to Rule 12(b)(6) is granted.

      b. Claims Related to Southwest's Alleged Failure to Make Reasonable Accommodations With Respect to Boarding, Air Travel Arrangements, and Services

B.S. alleges that Southwest committed tortious acts relating to boarding procedures, air travel accommodations, ticketing decisions, and employee servicing of flight reservations. Amended Complaint ¶ 32. Further, B.S. contends the conduct of the gate agent and supervisor involved in the decision to prevent B.S. and his family from boarding the flight from San Diego, and their alleged failure to provide reasonable accommodations to B.S., form the basis of state law negligence and IIED

claims. *Id.* ¶¶ 11, 32, 40.  The court concludes that Southwest's alleged acts or omissions "relate to" the airline's contract for "services" with the plaintiff and his family, and are therefore preempted under the Act.  "These matters are all appurtenant and necessarily included with the contract of carriage between the passenger . . . and the airline."  *Onoh*, 613 F.3d at 599.  Further, these services are not related to the safe operation or maintenance of an aircraft.  See *Hodges*, 44 F.3d at 336; *Smith*, 44 F.3d at 346.  Because these activities constitute airline services, if the plaintiffs were ultimately to recover, a judgment could regulate the economic or contractual aspects of boarding, which could run counter the Act's economic deregulation purposes.  See *Smith*, 44 F.3d at 347.

Furthermore, the connection between these acts or omissions and airline "services" is not "too tenuous, remote, or peripheral" to avoid preemption.  *Onoh*, 613 F.3d at 599.  Therefore, B.S.'s claims with respect to Southwest's alleged failure to make reasonable accommodations relating to boarding, ticketing, and employee servicing of flight reservations, including the conduct of the gate agent and the gate agent's supervisor, are preempted by the Act.  Southwest's motion to dismiss these claims pursuant to Rule 12(b)(6) is granted.

      c. Claims Related to the Alleged Conduct of the Southwest Pilot

B.S. contends that the conduct of the gate agent, the gate agent's supervisor, and the pilot amounts to disability discrimination and is the result of Southwest's

negligence. Amended Complaint ¶¶ 31-32. The Southwest employees' alleged behavior, most importantly the Southwest pilot's conduct in the jet way, also forms the basis of B.S.'s IIED claim. *Id.* ¶¶ 32, 40. Having already addressed the conduct of the gate agent and the gate agent's supervisor, the court now turns to the claims relating to the pilot's conduct. The court concludes that B.S.'s claims regarding the Southwest pilot's conduct are not preempted by the Act for the reasons stated below.

Southwest argues that B.S.'s claims relating to the pilot's alleged conduct "relate to Southwest services as defined by the [Act]" and are therefore preempted. Defendant's Motion at 11. Further, Southwest argues that "unprofessional conduct (which described Plaintiff's claimed conduct as to a Southwest captain), cannot be categorized as outrageous or unreasonable so as to fall outside the preemptive scope of the [Act]." *Id.* However, the court need not consider whether the pilot's alleged conduct falls within a spectrum of reasonable conduct because the court finds the pilot was not performing a "service" at the time of the alleged incident. While the pilot's alleged comments occurred during the boarding process, which is recognized as an airline "service," the connection between the pilot's conduct (and the instant state law tort claims) to an airline "service" is "too tenuous, remote, or peripheral" to be preempted by the Act. *Onoh*, 613 F.3d at 599.

Southwest cites three cases to support its contention that the plaintiff's claims regarding the Southwest pilot's conduct are related to airlines services and are

preempted by the Act. Defendant's Motion, at 11-12; see *Elnajjar v. Northwest Airlines, Inc.*, Nos. H-04-680, H-04-681, 2005 WL 1949545 (S.D. Tex. Aug. 15, 2005); *Adamore v. Southwest Airlines Corp.*, No. H-11-0564, 2011 WL 6301398 (S.D. Tex. Dec. 15, 2011); *Cannava v. USAir, Inc.*, No. 91-30003-F, 1993 WL 565341 (D. Mass. Jan. 7, 1993). Each case involved claims related to gate agents' conduct as they processed the plaintiffs' tickets or made a boarding decision and are distinguishable from the alleged facts in this case. See *id.*

In *Adamore*, the plaintiff brought an IIED claim, among other claims, regarding an airline ticketing agent's "very hostile," "uncompassionate" behavior towards her as she attempted to re-book a flight to visit her dying mother. *Adamore*, 2011 WL 6301398, at *5. The court preempted the plaintiff's claims because "[a]irline agents often deal with passengers who have missed their flights and have to handle re-booking and re-ticketing decisions as a matter of course; these activities relate to 'services' or 'rates.'" *Adamore*, 2011 WL 6301398, at *4. *Elnajjar* also involved the alleged conduct of an airline gate agent during the plaintiff's flight check-in, and similarly the court preempted the plaintiff's IIED, invasion of privacy, and defamation claims because "[a]irline agents often ask questions of passengers who present themselves for check-in and make ticketing and seating decisions as part of the boarding process, and these activities are 'services' within the meaning of the [Act]." *Elnajjar*, 2005 WL 1949545, at *5. Similarly, the court in *Cannava* found a

ticket agent's behavior, which included tearing up the plaintiff's bereavement ticket and ignoring the plaintiff's request for assistance, "constitute[d] 'services' -- poor services, to be sure -- performed while attempting to process plaintiff's ticket." *Cannava*, 1993 WL 565341, at *6.

In each case cited by Southwest, the alleged conduct of the airline employees occurred during or related to the ticketing or re-booking process. Under the Fifth Circuit's broad interpretation of "services" under the Act, the conduct of airline gate agents during the ticketing or re-booking process is clearly related to airline services. *Onoh*, 613 F.3d at 599 (noting that airline services include "ticketing," "boarding procedures," and matters "appurtenant and necessarily included with the contract of carriage between the passenger . . . and the airline").

In the instant case, the Southwest pilot's alleged conduct does not relate to ticketing or the contractual relationship between passenger and airline. While B.S.'s claims relate tangentially to Southwest's ticketing and boarding services, any such connection is too "tenuous, remote, or peripheral" to warrant preemption under the Act. *Onoh*, 613 F. 3d at 599. Objectively, the pilot's alleged conduct is "not part of any contractual arrangement" B.S. and his family had with Southwest. See *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1434 (7th Cir. 1996) ("Certain actions taken by airline personnel (e.g., a flight attendant assaulting a passenger) are undoubtedly not "services," but only because, objectively speaking,

they are not part of any contractual arrangement with the airlines).  Further, B.S.'s success on any state law claim relating to the pilot's conduct would not have a "significant relationship to the economic aspects of the airline industry." *Lyn-Lea Travel Corp. v. American Airlines*, 283 F.3d 282, 287 (5th Cir.) ("[Act] preemption is concerned solely with economic deregulation, not with displacing state tort law" (internal quotations omitted), *cert. denied*, 537 U.S. 1044 (2002)).  Therefore, B.S.'s claims relating to the alleged conduct of the Southwest pilot are not preempted.[*]  The court finds that B.S.'s allegations "plausibly give rise to an entitlement of relief," and Southwest's motion to dismiss pursuant to Rule 12(b)(6) is denied with respect to these claims.  See *Iqbal*, 556 U.S. at 678-79.

### B.  Conclusion

For the above stated reasons, the defendant's motion to dismiss is **GRANTED** in part and **DENIED** in part.  The defendant's motion to dismiss the plaintiff's claims pursuant to Rule 12(b)(6) is **DENIED** with respect to the plaintiff's ACAA claims.  The defendant's motion to dismiss the plaintiff's claims pursuant to the Act's preemption provision is **GRANTED** with respect to the plaintiff's negligence and IIED claims relating to the defendant's rendering of airline services.  The defendant's

---

[*]  Because the court is denying Southwest's motion to dismiss B.S.'s state law negligence and tort claims related to the alleged conduct of a Southwest employee, the court need not address Southwest's argument that B.S.'s punitive damages should also be dismissed.  *See* Defendant's Motion at 12.

motion to dismiss the plaintiff's claims pursuant to the Act's preemption provision is **DENIED** with respect to the plaintiff's negligence and IIED claims relating to the defendant's alleged actions unrelated to the rendering of airline services.

    **SO ORDERED**.

April 13, 2017.

                                      */s/ A. Joe Fish*
                                      **A. JOE FISH**
                                      **Senior United States District Judge**